138

**COLE, Estate of, In re.**

Probate Court, Clinton County.

No. 10089.  Decided July 21, 1952.

Allan Smith, Clinton H. Nichols, Wilmington, T. O. Dakin, Sabina, for executor.

Max Dennis, L. R. Curtis, Columbus, Joseph von Klinger, Lawrence R. Lyons, Blanchester, Sanford Headley, Cincinnati, Kenneth O. Stone, Sabina, Robert Wead, Xenia, counsel for parties.

## OPINION

By PUSATERI, J:

This is an action filed by the executor of the estate of Alfred L. Cole, deceased, to construe twelve items of the last will and testament of said decedent.

In the construction of this will the Court has followed the

cardinal rule of determining the intention of the testator, said intention being garnered from a study of the entire last will and testament of testator.

At the hearing before this Court on July 9, 1952, nine of the twelve items which the Court had been asked to construe, were disposed of. It was the order of the Court that briefs be filed relating to the remaining three items.

The first of these remaining three items concerns construction of Item Second of the last will and testament of testator herein, which item reads as follows:

"Second—I give, devise and bequeath to my tenant Mrs. John Hodge my farm of 270 acres situated in the Township of Wilson, Clinton County and Jasper Township, Fayette County, State of Ohio. . ."

Testator's only farm situated in Township of Wilson, Clinton County and Jasper Township, Fayette County, State of Ohio, which said farm was occupied at the time of testator's death, and which had been occupied for a number of years prior thereto, by the John Hodge family, actually consisted of 291.85 acres and not 270 acres as stated in said last will and testament. Counsel for the residuary devisees and legatees under said last will and testament contended that testator herein intended to devise 270 acres of the total acreage to the aforesaid Hodge tenants and that he further intended the remaining 21.85 acres to become a part of the residuum herein. This contention is untenable in the opinion of the Court because a thorough study of the last will and testament of testator shows that said testator took infinite pains to specificall] devise each and every parcel of real property owned by him. By way of illustration, testator devised even his small garden plot in the Village of Sabina, Ohio, which at best was of only nominal monetary value. Further, he took the time and effort to make a codicil to his last will and testament at the time he exchanged parcels of real property with one C. C. Beam.

We have three distinct descriptive phrases, namely "my tenant Mrs. John Hodge," "my farm of 270 acres," "situated in the Township of Wilson, Clinton County and Jasper Township, Fayette County State of Ohio." Under the Doctrine of False Demonstration if a mistake has been made in describing a certain parcel of real property or some specific item of personal property (and in the opinion of the Court as stated above it would appear that there definitely has been a mistake made in the use of the term 270 acres rather than the correct acreage of 291.85 acres) and if said mistaken description can be deleted, and, if after such deletion there remains enough descriptive terminology to identify the specific parcel of real property and/or personal property involved, then said

deletion can and should be made. As stated above, testator owned only one farm situated in Wilson Township, Clinton County and Jasper Township, Fayette County; and further the Hodge family were tenants, and had been tenants for a good number of years, of the whole 291.85 acres; therefore after the deletion of the phrase "270 acres" there still remains sufficient description to positively identify the real property involved. Therefore, in the opinion of the Court the phrase "270 acres" should be given no force or effect.

The second of these three remaining items concerns a conflict in the wording under Items Second, Fourth and Fifth of the last will and testament of testator herein, and since the same conflicting phrases are used in Items Second, Fourth and Fifth, a discussion of one of said items will apply to all three of them. In one of said phrases, testator gave and bequeathed "all livestock and all farm implements on said farm at that time"; whereas in the other phrase testator stated "that the said farm shall continue to operate as a going concern immediately from the date of and at my death." Testator has clearly indicated by the use of this latter phrase that he desired his tenant, to whom he devised his farm, to have any and/or all of the personal property on the farm which would be necessary to continue operation of said farm as a going concern. A strict definition of the phrase "all livestock and farm implements on said farm at that time" would defeat testator's expressed intention of having said devisee of his farm operate said farm as a going concern. Therefore it would appear that these two phrases are incompatible, and certainly either one or the other must be given greater effect. Once again, a thorough study of the entire last will and testament of testator indicates to the Court that it was testator's intention to reward the tenant for the long and faithful relationship which had existed between said tenant and said testator, to that end testator wanted said tenant to have said farm as a going business and/or concern as indicated by the use of the phrase to that effect. Therefore, it is the opinion of the Court that greater weight must be given to the phrase "that the said farm shall continue to operate as a going concern immediately from the date of and at my death." This then, leads to the conclusion that said tenant is legatee not only of the livestock and farm implements, but also of such items as corn in the crib, fertilizers, hog boxes, water fountains, seed, etc., and any other items on said farm which would be necessary to continue said farm operation as a going business and/or concern.

The last of these three remaining items concerns the matter of the payment of the federal estates taxes due and payable

from this estate. Testator herein had the right and privilege until the time of his death to designate in his will and/or codicil thereto, what specific fund or which specific devisees and/or legatees should bear the burden of the federal estates taxes. Testator did not avail himself of this privilege. Testator did make several specific devises and/or bequests to numerous parties, which indicates clearly that he wanted said particular parties to have the specific items and/or sums of money as set forth in his last will and testament. If after distribution of the above mentioned specific devises and/or bequests there remained anything in said estate, testator provided that said remainder or residue would go to certain other parties. This indicates to the Court that testator desired that the specific devises and/or bequests should be made as set forth, and that any debts, taxes or other expenses or burdens on said estate should come out of the residuum of said estate. This indication is further strengthened by the fact that in Item Sixth of said last will and testament, Wilbur Stump was devised the "home property"; and further, in Item Seventh of said last will and testament, Dilla Roberds was devised real property "situated on the north-west corner of Washington and College Streets in Sabina, Ohio and known as the Westfall house." In addition to these specific devises, both Wilbur Stump and Dilla Roberds are to receive one share each of the residuum as provided in Item Eighteenth of said last will and testament. As indicated above, this shows clearly that testator intended that the specific devises and/or bequests made in the first seventeen items of his last will and testament were not to bear the burden of debts, taxes, or any other expenses or burdens on said estate, but that these devises, and/or bequests should be made; and that the debts, taxes or other burdens of the estate should be paid; and then, at that point, if there remains any estate, it shall be divided in accordance with Item Eighteenth of the last will and testament, which item is commonly known as the residuary clause.

There was much discussion in the oral arguments of counsel for the various parties herein and also in said counsel's briefs herein, concerning the recent Ohio Supreme Court decision in the case of McDougall, Admr., Appellant, v. Central National Bank of Cleveland, Trustees, et al., Appellees, and its effect on the payment of Federal estates taxes by decedents estates. The McDougall case is distinguishable from this instant case on its facts to such a degree as to be inapplicable However, in the majority opinion in said McDougall case, there is stated in **Vol. 157 Oh St** at **page 58**, the following:

"The instant case is not like Young Men's Christian Assn.

v. Davis, supra, where, by the terms of her will, the testator indicated a preference for certain legatees by providing for them specifically and then specifically stating that what was left was to go to other legatees. In such an instance, especially where only probate assets are involved, it is apparent that those who are designated by the testator to take what is left over were intended by the testator to bear the burden of the debts, estate tax and other obligations of the estate, while the testator did not intend that those who were specifically provided for were to bear that burden."

The above quotation is on all fours with the case at hand and also indicates to this Court that the Ohio Supreme Court has not set forth a blanket apportionment policy in Ohio Law. If such apportionment is to be used in the payment of federal estates taxes, the Legislature of the State of Ohio can and should legislate on this matter.

An entry in conformity with this opinion should be drawn.